```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
JOSE ANTONIO TRAD GONZALEZ,

        Plaintiff,                              MEMORANDUM & ORDER

-against-                                       16-CV-1494(KAM)

UNITED STATES OF AMERICA, SPECIAL
AGENT STEPHEN MICHAEL LEE,
individually and in his capacity
as an agent of the Department of
Homeland Security, and "JOHN
DOES 1-10" (names being
Presently unknown and intended to
be the law enforcement personnel
involved in detention, battery,
arrest, imprisonment, and
prosecution of plaintiff),

        Defendants.
---------------------------------X
```

**MATSUMOTO, United States District Judge:**

In an amended complaint ("Compl." or the "complaint," ECF No. 27), plaintiff Jose Antonio Trad Gonzalez (the "plaintiff"), brings fifteen claims against the United States of America (the "United States"), Department of Homeland Security Special Agent Stephen Michael Lee ("SA Lee," and together with the United States, "defendants"), and ten unidentified John Doe 1-10 defendants, under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, and *Bivens v. Six Unknown Named Agents* ("*Bivens*", 403 U.S. 388 (1971), in connection with his March 28, 2013 arrest and subsequent detention and prosecution.

Before the court is defendants' motion to dismiss this action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

For the reasons set forth below, the court dismisses plaintiff's FTCA claims against the United States alleging negligence and violation of plaintiff's right to due process and *Bivens* claims against SA Lee and the John Doe defendants alleging negligent infliction of emotional distress, negligence/gross negligence, and violation of plaintiff's rights under the New York State Constitution, for lack of subject matter jurisdiction. Additionally, the court dismisses plaintiff's remaining claims for failure to state a claim upon which relief can be granted.

<u>**BACKGROUND**</u>

## I. Factual Background

The following well-pleaded factual allegations are taken from the complaint and assumed to be true for the purposes of this motion. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) ("When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint."). The court also considers a Memorandum Opinion and Order dated September 19,

2013 by the Honorable Laura Taylor Swain of the United States
District Court for the Southern District of New York, which is
annexed as Exhibit A to the complaint.  ("SDNY M&O," ECF No. 27-
1.)  Plaintiff, a Mexican citizen and municipal government
employee in Mexico, has lived at the same publicly-listed
address in the border city of Reynosa, Tamaulipas, Mexico, since
the 1970s.  (Compl. ¶¶ 25-27.)

Plaintiff formerly possessed a border crossing card
that incorporated B-1 and B-2 visas, which plaintiff regularly
used to cross the border into the United States to provide golf
lessons and play golf, until the card and visas expired in
November 2010.  (*Id.* ¶¶ 28-29.)  At some point prior to 2010,
plaintiff's border crossing card became mutilated such that it
was not machine-readable, but plaintiff was nevertheless able to
continue crossing the border with the card until his visas
expired in November 2010.  (*Id.* ¶¶ 30-31.)  Plaintiff made
approximately fifty border crossings between Mexico and the
United States between 2007 and 2010. (*Id.* ¶ 45.)  As noted by
Judge Swain, the United States did not have a record of
plaintiff's crossings from May 8, 2007 through 2010, perhaps due
to plaintiff's mutilated border crossing card, and considered
plaintiff a fugitive.  (SDNY M&O at 8-9.)

In 2006, plaintiff traveled to the United States with
a man he knew as Roberto Gonzalez, also known to the United

3

States as Jose Zumaya ("Zumaya").  (*Id.* ¶ 34.)  During this
visit to the United States, plaintiff opened a Bank of America
account using his true name and address.  (*Id.* ¶¶ 35-36.) In May
2007, Zumaya and an individual named Johnny Jacob ("Jacob"),
were arrested, in connection with an investigation of an alleged
narcotics conspiracy in which Zumaya and Jacob were allegedly
co-conspirators.  (*Id.* ¶ 37-38.) Plaintiff was aware of the
Zumaya arrest in May 2007.  (*Id.* ¶¶ 38, 45.)  SA Lee was the
supervisory agent for the investigation of the alleged narcotics
conspiracy, and the John Doe defendants are other government
employees and agents who participated in the investigation and
subsequent arrests and prosecutions.  (*Id.* ¶¶ 39.)

Following their arrest, Zumaya and Jacob began
cooperating with the United States, and in the course of their
cooperation, Zumaya told the defendants that, in 2006, he and
plaintiff "had twice flown from McAllen, Texas, to pick up and
deliver drugs and cash for Jacob."  (*Id.* ¶ 40.)  Based on
Zumaya's and Jacob's allegations and other evidence, including
airline and hotel receipts and records indicating that plaintiff
opened a Bank of America account when plaintiff traveled to New
York with Zumaya in 2006, a warrant was issued for plaintiff's
arrest on federal narcotics charges on or about February 25,
2009. (*Id.* ¶¶ 41-43.)  The records obtained by the defendants
during the investigation of the narcotics conspiracy included

plaintiff's name, address, and telephone number in Mexico. (*Id.*)

In the course of his investigation and at some point in 2007, SA Lee put a "lookout" alert on plaintiff's immigration file. (*Id.* ¶ 52.) According to the complaint, the "lookout" would cause a computer-generated e-mail to be sent to SA Lee in the event of any contact between plaintiff and United States officials at any port of entry, including contact resulting from any attempt by plaintiff to enter the United States. (*Id.* ¶¶ 52-53.) SA Lee and others involved in the investigation of the alleged narcotics conspiracy also began conducting yearly database checks in an effort to locate plaintiff and obtained hotel and bank records relating to plaintiff. (*Id.* ¶ 48, 54) SA Lee and others involved in the investigation did not make any attempt to determine whether plaintiff resided at the address in Mexico indicated on plaintiff's records, nor did they seek to extradite plaintiff from Mexico despite the existence of an extradition treaty, and of a United States Consulate and a Department of Homeland Security office in the vicinity of Reynosa, the Mexican city where plaintiff was residing. (*Id.* ¶¶ 25, 48-51.)

In late 2012 or 2013, plaintiff, who had been aware since 2007 that Zumaya had been arrested on drug related charges but was unaware of the warrant for his own arrest, (*id.* ¶ 44-

46), applied for a new visa to enter the United States using his true name and address. (*Id.* ¶ 46.) As part of the application process, he attended a consular interview in Mexico and had his fingerprints taken. (*Id.*) Because of the "lookout," SA Lee received electronic notification of plaintiff's visa application. (*Id.* ¶ 55.) Following an inquiry by unidentified federal government employees, referred to in the complaint as among the John Doe defendants, SA Lee confirmed that the warrant for plaintiff's arrest was still active and valid. (*Id.*) Plaintiff was subsequently issued a visa for the sole purpose of arresting him upon any attempted entry to the United States. (*Id.* ¶ 56.)

On March 28, 2013, plaintiff attempted to cross the border into the United States at the McAllen-Reynosa border crossing in McAllen, Texas with his new visa, was arrested, and remained in custody for nearly eight months, until October 18, 2013. (*Id.* ¶ 57-58.) During this time, plaintiff was in federal custodial facilities in Texas; Oklahoma; Bergen County, New Jersey; and Brooklyn, New York. (*Id.* ¶ 59.)

In or around March or April of 2013, a grand jury was impaneled in the Southern District of New York and, following presentation of evidence by the defendants, on April 3, 2013, indicted plaintiff on one count of conspiracy to possess cocaine with intent to distribute from October 2006 to May 2007, in

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (*Id.* ¶ 60,

62.) A second grand jury was subsequently impaneled and, on

August 4 or 5, 2013,[1] issued a superseding indictment against

Plaintiff, which stated the dates of the alleged conspiracy as

"2006 to 2007." (*Id.* ¶ 63; *see also* SDNY M&O at 5 (noting that

the only change between the initial and superseding indictments

was "that the dates of the alleged conspiracy were expanded from

October 2006 to May 2007, to 2006 to 2007").)

     Plaintiff alleges that the evidence defendants

presented to procure the initial and superseding indictments was

"unreliable, misleading, false and/or incomplete." (*Id.* ¶¶ 61,

64.) Plaintiff relies on an alleged failure by defendants to

advise the grand juries that 18 U.S.C. § 3282(a) served to bar

the prosecution, trial, or punishment of any person "unless the

indictment is found or the information is instituted within five

years next after such offense shall have been committed." (*Id.*)

The complaint alleges that the grand juries should have been

advised of the five-year statute of limitations because

plaintiff's alleged criminal conduct occurred no later than "May

2007" with respect to initial indictment and "2007" with respect

to the superseding indictment. (*Id.*) Therefore, plaintiff's

---

[1]    The complaint states that the superseding indictment was issued on August 4, 2013, (Compl. ¶ 63), but the SDNY M&O states that the superseding indictment was issued on August 5, 2013. (SDNY M&O at 5.) The court need not resolve this discrepancy because it does not affect the disposition of the instant motion.

alleged criminal conduct occurred more than five years before the return of the initial and superseding indictments, in April and August 2013, respectively.  (*See id.*)

On or about July 22, 2013, plaintiff's criminal defense counsel moved before Judge Swain to dismiss plaintiff's indictment as time-barred under 18 U.S.C. § 3282(a).[2]  (Compl. ¶ 65.)  The United States opposed plaintiff's motion and argued that plaintiff had been a fugitive from justice, and accordingly the statute of limitations had been tolled by reason of plaintiff's flight from justice pursuant to 18 U.S.C. § 3290. (*Id.* ¶ 66.)  Following an evidentiary hearing, on September 19, 2013, Judge Swain found that the government had not carried its burden to show that the statute of limitations should be tolled on flight from justice grounds and dismissed the superseding indictment and ordered plaintiff's release.  (*Id.* ¶¶ 67-68, 70; *see also generally* SDNY M&O.)

The SDNY M&O directed the United States to release plaintiff, who had been in custody since his arrest on March 28, 2013, "as of 12:00 p.m. noon on Monday September 23, 2013" (SDNY M&O at 10; *accord* Compl. ¶ 68), though plaintiff was not actually released until October 18, 2013.  (Compl. ¶ 71.)

---

[2]    Plaintiff alleges that his motion to dismiss his indictment was made before the second grand jury was impaneled.  (Compl. ¶¶ 63-65.)

Plaintiff subsequently initiated administrative tort claims against United States Customs and Border Protection ("CBP") and the United States Department of Justice ("DOJ") under the FTCA, (*see id.* ¶¶ 3-4), and, on March 1, 2016, was informed by CBP that his claim against that agency was denied.[3] (*Id.* ¶ 5.)  Plaintiff initiated this action by filing an initial complaint on March 27, 2016, (the "Initial Complaint," ECF No. 1), and filed the instant amended complaint on February 22, 2017.[4]

## II. The Complaint

The complaint asserts fifteen "counts," the first six against the United States pursuant to the FTCA and the remaining nine against SA Lee and Does 1-10 pursuant to *Bivens*.  The FTCA counts assert claims for false arrest (Count I), false imprisonment (Count II), malicious prosecution (Count III), abuse of process (Count IV), "Violation of Right to Due Process" (Count V), and negligence (Count VI).  (Compl. ¶¶ 78-108.)  The *Bivens* counts assert claims against SA Lee and the John Doe

---

[3]    The complaint states that "[plaintiff] has not yet received a reply [from DOJ] regarding his claim with that agency."  (Compl. ¶ 7.)
[4]    Plaintiff's initial complaint listed Special Agent Matthew Maguire ("SA Maguire") of the Diplomatic Security Service and Officer Deepak (also spelled "Deepaka" in the Initial Complaint) Chopra ("Officer Chopra") of Customs and Border Patrol as defendants.  (Initial Complaint at 1 and ¶¶ 13-14.)  A review of the docket indicates that SA Maguire and Officer Chopra have not been formally dismissed as defendants.  The instant complaint, however, does not name them as defendants, nor does it include any allegations specific to them.  Accordingly, the court concludes that the complaint presently before it does not state any claims against SA Maguire and Officer Chopra, and dismisses this action as against them.

defendants for false arrest (Count VII), false imprisonment
(Count VIII), malicious prosecution (Count IX), malicious abuse
of process (Count X), unreasonably prolonged detention (Count
XI), "Violation of Due Process" (Count XII), "Violation [o]f
Plaintiff's Rights Under [t]he New York State Constitution"
(Count XIII), negligent infliction of emotional distress (Count
XIV), and "negligence/gross negligence" (Count XV). (*Id.* ¶¶
109-135).

On February 1, 2017, the court granted defendants
leave to file a motion to dismiss or for summary judgment, (*see*
February 1, 2017 Minute Entry), and the instant motion to
dismiss was fully briefed and submitted as of August 11, 2017.
(*See* Notice of Motion, ECF No. 31.) In support of their motion,
defendants have submitted a memorandum of law ("Mem.," ECF No.
32) and a reply memorandum. (ECF No. 33.) Plaintiff has
submitted a memorandum in opposition to defendants' motion.
("Opp.," ECF No. 30.)

## LEGAL STANDARD

Defendants seek dismissal of the complaint under Rule
12(b)(1) for lack of subject matter jurisdiction, and under Rule
12(b)(6) for failure to state a claim upon which relief can be
granted. (Mem. at 1.).

In considering Rule 12(b)(6) motions, courts must
generally accept as true all well-pleaded factual allegations

stated in the complaint and draw all reasonable inferences in favor of the plaintiff. *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (citations omitted). The same is true when courts consider Rule 12(b)(1) motions, but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), (citing *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) and quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)), *aff'd*, 561 U.S. 247 (2010).[5]

"A case is properly dismissed . . . under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). "[J]urisdiction to entertain a claim against the United States exists only as Congress has granted it," and "[a]ny waiver of the government's sovereign immunity is to be strictly construed in favor of the government." *Long Island*

---

[5]    The court may also consider "affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Zappia Middle E. Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) and *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986)).

*Radio Co. v. N.L.R.B.*, 841 F.2d 474, 477 (2d Cir. 1988)
(citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a
complaint must contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its
face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A
claim is plausible "when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Id.* (citing
*Twombly*, 550 U.S. at 556). "The plausibility standard . . .
asks for more than a sheer possibility that a defendant has
acted unlawfully," and a complaint that "pleads facts that are
'merely consistent with' a defendant's liability . . . 'stops
short of the line between possibility and plausibility of
entitlement to relief.'" *Id.* (citing and quoting *Twombly*, 550
U.S. at 556-57.)

Finally, "[w]here, as here, the defendant moves for
dismissal under Rule 12(b)(1) . . . as well as on other grounds,
the court should consider the Rule 12(b)(1) challenge first
since if it must dismiss the complaint for lack of subject
matter jurisdiction, the accompanying defenses and objections
become moot and do not need to be determined." *Rhulen Agency,*

*Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir.
1990) (internal quotation marks and citations omitted).

**DISCUSSION**

**I.    The FTCA and *Bivens***

"The United States, as sovereign, is immune from suit
save as it consents to be sued . . . , and the terms of its
consent to be sued in any court define that court's jurisdiction
to entertain the suit." *McGowan v. United* States, 825 F.3d 118,
125 (2d Cir. 2016) (omission in quoted material) (quoting
*Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012)).  The
Supreme Court has emphasized that the FTCA waives sovereign
immunity "'where the United States, if a *private person*,' not
'the United States, if a state or municipal entity,' would be
liable." *United States v. Olson*, 546 U.S. 43, 45-46 (quoting 28
U.S.C. § 1346(b)(1)) (emphasis in source material).  The FTCA is
a limited waiver of sovereign immunity and authorizes suits
against the United States to recover damages

> for injury or loss of property, or personal
> injury or death caused by the negligent or
> wrongful act or omission of any employee of the
> Government while acting within the scope of his
> office or employment, under circumstances where
> the United States, if a private person, would be
> liable to the claimant in accordance with the law
> of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The FTCA is "structured as a grant of subject matter jurisdiction to the federal courts," and is subject to certain exceptions. *Caban v. United States*, 671 F.2d 1230, 1235 n.5 (2d Cir. 1982) (citations omitted); *see also* 28 U.S.C. § 1346(b). A finding that a statutory exception applies to a claim is therefore "tantamount to holding that the court lacks jurisdiction to entertain that claim." *Caban*, 671 F.2d at 1235 n.5.

Under *Bivens*, "victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980). The *Bivens* remedy, however, is only available for violations of the Fourth Amendment, the Due Process Clause of the Fifth Amendment, and the Cruel and Unusual Punishments Clause of the Eighth Amendment. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66-68 (2001) (discussing availability of the *Bivens* remedy and collecting cases).

## II. Plaintiff's Claims

### A. FTCA Constitutional Tort and Negligence Claims (Counts V and VI)

Defendants contend that plaintiff's FTCA constitutional tort claim asserted against the United States and FTCA negligence claim fall outside the FTCA's waiver of

sovereign immunity.  (Mem. at 8, 12-13.)  As set forth below, the court agrees.

### 1.   Plaintiff's FTCA Constitutional Tort Claim (Count V)

Defendants contend that that the United States has not waived its sovereign immunity for constitutional torts.  (Mem. at 8.)  In *FDIC v. Meyer*, the Supreme Court noted that "[a] claim comes within th[e FTCA's] jurisdictional grant – and thus is 'cognizable' under [28 U.S.C.] § 1346(b) – if it is actionable under § 1346(b)."  510 U.S. 471, 477 (1994).  The Supreme Court then observed that for a claim to be actionable against the United States under the FTCA, "a claim must allege, *inter alia*, that the United States 'would be liable to the claimant' as 'a private person' 'in accordance with the law of the place where the act or omission occurred.'"  *Id.*  However, "[a] constitutional tort claim . . . could not contain such an allegation" by definition.  *Id.* at 477-78.

*Meyer* is controlling: the FTCA's waiver of sovereign immunity does not extend to constitutional tort claims against the United States.  Accordingly, plaintiff's FTCA cause of action alleging violation of his right to due process (Count V) is dismissed for lack of subject matter jurisdiction.

## 2. Plaintiff's FTCA Negligence Claim (Count VI)

Defendants contend that the court lacks subject matter jurisdiction over plaintiff's FTCA negligence claim against the United States because the claim lacks a private analogue. (Mem. at 12-13.) Plaintiff contends that he "makes the same claims . . . and should be afforded the same rights" as the plaintiff in *Liranzo v. United States*, 690 F.3d 78 (2d Cir. 2012). (Opp. at 5-6.) In *Liranzo* the Second Circuit concluded that, where a plaintiff sued based on an allegedly unlawful immigration detention, a private law analogue exists – specifically, the private analogue is a person who "entirely in his or her private capacity, places someone under arrest for an alleged violation of the law – a so-called 'citizen's arrest.'" 690 F.3d at 80-81, 94-95.

More recently, however, the Second Circuit has expressly concluded that "negligent investigation" is not actionable under New York tort law and therefore is not cognizable under the FTCA. *Watson v. United States*, 865 F.3d 123, 134-35 (2d Cir. 2017). Notably, the Second Circuit reached this conclusion in a case where plaintiff had alleged that federal agents had violated "internal regulations for how to

investigate a suspected alien's assertion of U.S. citizenship."
*Id.* at 134.[6]

Here, plaintiff does not allege the violation of any
internal regulations. Instead, the complaint alleges that
defendants owed some unspecified "duty" to plaintiff and
breached it. (Compl. ¶ 105.) The complaint fails to specify
which of defendants' acts plaintiff contends were negligent – it
instead merely "repeats and realleges every allegation set
forth" previously in the complaint, (*id.* ¶ 104), and, in
substance, asserts that negligence can be found somewhere in
those allegations. (*Id.* ¶¶ 104-08.)

Plaintiff's basis for asserting negligence against the
United States appears to be that defendants negligently
investigated him, resulting in his arrest and his prosecution,
which was ultimately dismissed as time barred. As discussed
above, a "negligent investigation" claim lacks a private
analogue and is not cognizable under the FTCA. Further, the
only distinguishing feature between the instant action and
*Watson* makes plaintiff's negligence claim even less viable:

---

[6]     Plaintiff alleges he was arrested in Texas and held, at one point or
another, in Texas, Oklahoma, New Jersey and New York. The court analyzes
plaintiff's negligence claim under New York law because plaintiff's
allegations regarding the manner in which his investigation was conducted
relate specifically to SA Lee, and the complaint alleges that "[a]t all
times, unless otherwise mentioned, the acts and conduct of [SA Lee] occurred
in the state of New York." (Compl. ¶ 13.) Further, plaintiff does not
assert that any particular state's substantive law should apply to his FTCA
negligence claim.

unlike the *Watson* plaintiff, plaintiff here does not assert the existence of *any* specific duty by the United States to the subject of an investigation that could render plaintiff's negligence claim cognizable under the FTCA.  Additionally, in *Watson*, the Second Circuit observed that that "under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution."  *Id.* (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

There is no private analogue to plaintiff's FTCA negligence claim.  Consequently, the court lacks subject matter jurisdiction, and plaintiff's FTCA negligence claim (Count VI) is dismissed.

**B.    FTCA and *Bivens* Malicious False Arrest, False Imprisonment, Malicious Prosecution, and Abuse of Process Claims**

Defendants contend that all of plaintiff's FTCA claims against the United States are predicated on allegations regarding prosecutorial conduct, and that because the law enforcement proviso's waiver in 28 U.S.C. § 2680(h) does not cover prosecutors, the intentional tort exception deprives this court of subject matter jurisdiction over plaintiff's claims.  (*See* Mem. at 8-10.)  Defendants also contend that all of plaintiff's claims fall within the discretionary function

18

exception. (*Id.* at 10-12.) The court addresses these arguments as they relate to plaintiff's remaining FTCA claims.

    **1. *The Intentional Tort Exception Does Not Categorically Bar Plaintiff's Claims Against the United States Based on Acts and Omissions by SA Lee and Does 1-10***

   The intentional tort exception in 28 U.S.C. § 2680(h) preserves the government's sovereign immunity for "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2580(h). The law enforcement proviso is an exception to this exception, and "extends the waiver of sovereign immunity to claims for six intentional torts . . . that are based on the 'acts or omissions of investigative or law enforcement officers.'" *Millbrook v. United States*, 569 U.S. 50, 52-53 (2013) (quoting 28 U.S.C. § 2680(h)). The law enforcement proviso further defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). The six intentional torts to which it applies are "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." *Id.*

19

Defendants note that "the crux of plaintiff's complaint is that he should not have been indicted and prosecuted," as the statute of limitations under 18 U.S.C. § 3282(a) had run by the time of his indictment. (Mem. at 9.) Defendants contend that because "federal prosecutors pursued the indictment and carried out the prosecution," plaintiff's FTCA claims arise out of prosecutorial, rather than law enforcement, conduct. (*Id.* at 9-10.) Defendants assert that, because the law enforcement proviso only waives the United States' sovereign immunity with respect to "acts or omissions of investigative or law enforcement officers," 28 U.S.C. § 2680(h), and prosecutors do not meet this definition, the court lacks subject matter jurisdiction.

Defendants cite a number of cases standing for the unremarkable proposition that the FTCA does not authorize suits against federal prosecutors, which proposition is not opposed by plaintiff. *See, e.g. Bernard*, 25 F.3d at 104 (noting that the FTCA does not authorize suits based on the actions of prosecutors); *Dirienzo v. United States*, 690 F. Supp. 1149, 1158 n.8 (D. Conn. 1988) ("The United States Attorney and his assistants are not 'law enforcement agents' for whose intentional torts the government is liable under 28 U.S.C. § 2680(h)." (citations omitted)).

Defendants' cases merely stand for the proposition that, in asserting an FTCA claim based on allegations of law enforcement misconduct, a plaintiff "may not rely upon the acts or omissions of the prosecuting attorney to hold the government liable for malicious prosecution." *Dirienzo*, 690 F. Supp. at 1158 n.8; *see also Bernard*, 25 F.3d at 104 ("Once the grand jury indicted Bernard, control of the prosecution passed to the prosecutor and was no longer within the agent's authority. Because the FTCA does not authorize suits for intentional torts based upon the actions of Government prosecutors, plaintiff cannot support his malicious prosecution claim with facts that arose after his indictment." (citation omitted)).  Thus, to the extent that plaintiff alleges that the United States is liable under the FTCA for his indictment and prosecution, his claims are dismissed for lack of subject matter jurisdiction.

Defendants, however, overlook that plaintiff also seeks FTCA recovery based on the pre-indictment actions and omissions of SA Lee and the John Doe defendants. (*See generally* Compl. ¶¶ 23-61.)  For these actions, the law enforcement proviso expressly waives the United States' sovereign immunity for false arrest, false imprisonment, malicious prosecution, and malicious abuse of process claims based on "acts or omissions of investigative or law enforcement officers of the United States Government."  28 U.S.C. § 2680(h).  The court must therefore

determine whether plaintiff states a claim for the intentional

tort causes of action.

> **2.** **The Discretionary Function Exception Does Not Categorically Bar Plaintiff's Claims Against the United States Based on Acts and Omissions by SA Lee and Does 1-10**

Defendants contend the complaint "call[s] upon the

Court to evaluate the discretionary decisions of law enforcement

officers to arrest, indict and prosecute an individual as well

as to conduct the requisite investigations necessary to

determine whether to take those actions." (Mem. at 11.)

Defendants therefore contend that the acts and omissions at

issue fall within the discretionary function exception to the

FTCA's waiver of sovereign immunity.

The discretionary function exception is codified at 28

U.S.C. § 2680(a), and provides that the FTCA's limited waiver of

sovereign immunity is inapplicable to any claim "based upon the

exercise or performance or the failure to exercise or perform a

discretionary function or duty on the part of . . . an employee

of the Government, whether or not the discretion involved be

abused." The discretionary function exception applies "only if

two conditions are met: (1) the acts alleged to be [tortious]

must be discretionary, in that they involve an 'element of

judgment or choice' and are not compelled by statute or

regulation and (2) the judgment or choice in question must be

grounded in 'considerations of public policy' or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (citing *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) and *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988)); *accord Reichhart v. United States*, 408 F. App'x 441, 443 (2d Cir. 2011) (citations omitted).

The Second Circuit has cautioned that the discretionary function exception and the law enforcement proviso, discussed above in connection with the intentional tort exception, should not be "read to eviscerate [each] other." *Caban v. United States*, 671 F.2d 1230, 1234 (2d Cir. 1982) (citation omitted). The Supreme Court's construction of the law enforcement proviso in *Millbrook v. United States* is instructive:

> *Amicus* contends that we should read the reference to 'investigative or law-enforcement officer' as implicitly limiting the proviso to claims arising from actions taken in an officer's investigative or law enforcement *capacity*. But there is no basis for so limiting the term when Congress has spoken directly to the circumstances in which a law enforcement officer's conduct may expose the United States to tort liability. Under the proviso, an intentional tort is not actionable unless it occurs while the law enforcement officer is 'acting within the scope of his office or employment.' Had Congress intended to further narrow the scope of the proviso, Congress could have limited it to claims arising from 'acts or omissions of investigative or law enforcement officers *acting in a law enforcement or investigative capacity*.'

569 U.S. at 56-57 (emphasis in original) (citations omitted).

Based on the foregoing, the Supreme Court concluded the law enforcement proviso waives sovereign immunity of the United States for the six intentional torts identified therein, so long as the tortious conduct "arise[s] within the scope of [law enforcement officers'] employment." *Id.* at 57.

Here, the complaint seeks to assert FTCA claims against the United States for the intentional torts of false arrest, false imprisonment, malicious prosecution, and malicious abuse of process, based on the acts and omissions of SA Lee and the John Doe 1-10 defendants. (Compl. ¶¶ 78-97.) The parties do not dispute that the acts giving rise to plaintiff's asserted causes of action were taken by law enforcement officials within the scope of their employment. Further, there is no indication that SA Lee, or any other John Doe defendant, was assisting prosecutors in determining whether to prosecute, under which circumstances some courts have concluded that the discretionary function exception applies. *See, e.g., Caronia v. United States*, No. 13-CV-5758(FB)(LB), 2015 WL 4872558, at *5 (E.D.N.Y. Aug. 13, 2015) (citations omitted), *aff'd sub nom. Caronia v. Orphan Med., Inc.*, 643 F. App'x 61 (2d Cir. 2016). Moreover, there is no indication that the acts or omissions of SA Lee, or any other law enforcement officer, were grounded in public policy considerations or susceptible to policy analysis to any

greater extent than the day-to-day activities of law enforcement officers generally.

The court therefore will not dismiss plaintiff's FTCA intentional tort claims against the United States for lack of subject matter jurisdiction based on the discretionary function exception. Instead, the court will evaluate the claims to determine whether the complaint sufficiently states a claim upon which relief can be granted.

### 3. *Plaintiff's FTCA and Bivens False Arrest and False Imprisonment Claims (Counts I-II and VII-VIII)*

Plaintiff was arrested in Texas and was ultimately transported to New York, where he was indicted and prosecuted, and remained in custody, with intermediate stops in Oklahoma and New Jersey. (*See* Compl. ¶¶ 59-60.) Further, unlike plaintiff's FTCA negligence claim, it is clear from the complaint that law enforcement officers other than SA Lee were involved in plaintiff's arrest, and were so involved in several other states. As noted above, the FTCA defines liability with reference to that of a private person under "law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

Defendants contend that plaintiff's *Bivens* false arrest and false imprisonment claims are time-barred by the two year statute of limitations for those actions under Texas law. (Mem. at 15.) Plaintiff agrees that the statute of limitations

for false arrest and false imprisonment is two years under Texas law. (Opp. at 7.) Plaintiff contends, however, that under Texas law, false arrest and false imprisonment are continuing torts that accrue when the detention ends. (Opp. at 7 (citing *Adler v. Beverly Hills Hosp.*, 594 S.W.2d 153, 154 (Tex. Civ. App. 1980).)

Plaintiff's continuing tort argument is without merit. The Supreme Court, in *Wallace v. Kato*, 549 U.S. 384 (2007), rejected the "petitioner's contention that his false imprisonment ended upon his release from custody," 548 U.S. at 390, and instead determined that his false imprisonment ended "much earlier, when legal process was initiated against him," *id.*, which occurs when an arrestee "for example, is bound over by a magistrate or arraigned on charges." *Id.* at 389.

Further, although state law supplies the statute of limitations for *Bivens* claims, federal law determines when a *Bivens* claim accrues, and provides that it accrues when a plaintiff becomes aware, or has reason to become aware, of his injury. *See Kronisch v. United States*, 150 F.3d 112, 121-23 (2d Cir. 1998) (citations omitted); *accord Adrian v. Selbe*, 364 F. App'x 934, 936-37 (5th Cir. 2010) (citing *Alford v. United States*, 693 F.2d 498, 499 (5th Cir. 1982), *United Klans of America v. McGovern*, 621 F.2d 152, 153 n.1 (5th Cir. 1980), and

*Brown v. Nationsbank Corp.*, 188 F.3d 579, 589-90 (5th Cir. 1999)).

Because a false arrest or false imprisonment claim accrues under federal law when legal process is initiated against an arrestee, *Wallace*, 549 U.S. at 391, plaintiff's false arrest and false imprisonment claims accrued when he was first bound over or arraigned. Although the complaint is not clear as to when plaintiff was bound over or arraigned, plaintiff certainly would have been arraigned at some point after his arrest on March 28, 2013, (Compl. ¶ 57), and before the evidentiary hearing on his motion to dismiss the indictment, which took place on September 10, 2013. (*See* SDNY M&O, Compl. Ex. A, ECF No. 27-1 at 1.) As noted above, the instant action was commenced on March 27, 2016. Accordingly, plaintiff's *Bivens* false arrest claim against SA Lee and the John Doe defendants is time-barred under Texas law.

Additionally, under the laws of Texas, Oklahoma, New Jersey, and New York, the states noted in the complaint, (Compl. ¶ 59), probable cause is a complete defense to plaintiff's false arrest and false imprisonment causes of action. *See Villegas v. Griffin Indus.*, 975 S.W.2d 745, 753-54 (Tex. App. 1998, *pet. denied*) (noting that where legality of an arrest by a law enforcement officer is at issue, claim is properly asserted as one for false arrest and probable cause is a complete defense);

*Roberts v. Goodner's Wholesale Foods, Inc.*, 50 P.3d 1149, 1151–52 and 1152 n.3 (Okla. Civ. App. 2002) (same); *Wildoner v. Borough of Ramsey*, 744 A.2d 1146, 1154 (N.J. 2000) ("[P]robable cause is an absolute defense to Plaintiff's false arrest, false imprisonment, and malicious prosecution claims."); *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (stating that under New York law, probable cause is a complete defense to a false arrest claim); *Greenaway v. Cty. of Nassau*, 97 F. Supp. 3d 225, 233 (E.D.N.Y. 2015) ("Probable cause is a complete defense to both Fourth Amendment and New York State law claims of false imprisonment." (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996))).

Probable cause to arrest exists where the information available to the arresting officer is "sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (quoting *O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir. 1993)).  The Supreme Court has made clear that probable cause to arrest "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," and "is not a high bar."  *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 243-44 n.13

(1983) and *Kaley v. United States*, 134 S. Ct. 1090, 1103
(2014)).

Here, the existence of probable cause to arrest is
clear from the face of plaintiff's complaint, which alleges that
a warrant for plaintiff's arrest on narcotics charges was issued
on or about February 25, 2009. (*Id.* ¶ 43.) As defendants
correctly note, (Mem. at 17), the issuance of an arrest warrant
by a neutral magistrate depends on a finding of probable cause,
and accordingly creates a presumption of probable cause. *See
Golino v. City of New Haven*, 950 F.2d 864, 870-71 (2d Cir. 1991)
(noting that issuance of warrant depends on finding of probable
cause, and a plaintiff who argues that a warrant was issued on
less than probable cause "faces a heavy burden"); *see also
Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548,
553-54 (5th Cir. 2016) (noting, in relevant part, that under the
Fifth Circuit's "independent intermediary" doctrine, no
liability for false arrest can accrue where the facts supporting
a warrant are put before an impartial intermediary, *e.g.*, a
magistrate or grand jury), *cert. denied sub nom. Buehler v.
Austin Police Dep't*, 137 S. Ct. 1579 (2017).

Plaintiff does not challenge the sufficiency of the
substantive factual probable cause basis for the warrant.
Instead, he disputes the existence of probable cause for his
arrest with a repeated assertion that, at the time of

plaintiff's arrest in March 2013, "the warrant acted upon to detain the plaintiff was facially stale" as it pertained to alleged crimes for which the statute of limitations had run.[7] (Opp. at 7; *see also* Opp. at 8-10; Compl. ¶¶ 55-58.)

Plaintiff's contention that the passage of time in and of itself vitiates the probable cause that led a neutral magistrate to sign an arrest warrant is mistaken. In a criminal prosecution, the statute of limitations is a waivable affirmative defense, *United States v. Koh*, 968 F. Supp. 136, 137 (S.D.N.Y. 1997) (citing *United States v. Walsh*, 700 F.2d 846, 855-56 (2d Cir. 1983), *cert. denied* 464 U.S. 825 (1983)), not an element of the offense. In other words, the running of the statute of limitations would not negate the probable cause showing that criminal activity had occurred, but potentially could limit plaintiff's criminal liability. Therefore, the running of the statute of limitations is not dispositive of, and of little, if any, relevance to, the existence of "a probability or substantial chance of criminal activity," which, to reiterate, "is not a high bar." *Wesby*, 138 S. Ct. at 586 (citations omitted).

---

[7]    Plaintiff also repeatedly asserts that the warrant was invalid, (Opp. at 1, 4, 8-9; Compl. ¶ 55-56, 110, 112, 116), but the only basis for this contention appears to be that the statute of limitations had run. Plaintiff therefore appears to conflate "invalidity" and "staleness."

Further, even if no warrant had been issued for plaintiff's arrest, or if the warrant were a nullity, the facts alleged in the complaint establish probable cause to arrest plaintiff. The complaint alleges that Zumaya and Jacob, both of whom the government had arrested on narcotics conspiracy charges, advised the government that plaintiff, together with Zumaya, "had twice flown from McAllen, Texas to pick up and deliver drugs and cash for Jacob." (Compl. ¶¶ 37-40.) The complaint further alleges that the government had obtained "airline and hotel receipts" confirming that plaintiff visited New York with Zumaya or Jacob in 2006, and that plaintiff had opened a bank account during that visit. (*Id.* ¶ 41.) Even viewed in the light most favorable to the plaintiff, these alleged facts establish the existence of a "probability or substantial chance of criminal activity," by the plaintiff, specifically a narcotics distribution conspiracy for which plaintiff was indicted. (Compl. ¶¶ 62-63; SDNY M&O at 1; *see also Wesby*, 138 S. Ct. at 586 (discussing probable cause).)

The complaint's other relevant allegations do not vitiate the existence of probable cause for plaintiff's arrest. Specifically, the complaint alleges that plaintiff continued to make border crossings after the mutilation of his border card in 2007, (Compl. ¶¶ 30-31, 45), and that plaintiff made no effort to conceal himself while living in Mexico after he learned of

31

Zumaya's arrest in 2007, or after a warrant issued for plaintiff's own arrest. (*Id.* ¶¶ 25-27, 45.) Plaintiff's complaint does not allege that defendants were aware of plaintiff's visits to the United States after he learned of Zumaya's arrest in 2007, and in any event, although these allegations may be relevant to the availability of an affirmative statute of limitations defense, they are of little, if any, relevance to the existence of probable cause to believe plaintiff committed a crime.

For the foregoing reasons, the court concludes that plaintiff has not sufficiently alleged a lack of probable cause for his arrest. Therefore, defendants' motion to dismiss plaintiff's FTCA false arrest and false imprisonment claims for failure to state a claim is granted, and Counts I and II are dismissed. For these same reasons, plaintiff fails to state a *Bivens* claim for false arrest or false imprisonment against SA Lee and John Does 1-10. Accordingly, plaintiff's claims for false arrest and false imprisonment (Counts I-II and VII-VIII) are dismissed for failure to state a claim.

### 4. Plaintiff's FTCA and Bivens Malicious Prosecution Claims (Counts III and IX)

Plaintiff's prosecution took place in the Southern District of New York, and New York law therefore applies to his FTCA malicious prosecution claim by operation of 28 U.S.C. §

1346(b)(1). "A malicious prosecution claim under New York law requires the plaintiff to prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). A plaintiff must establish these same elements to prove both an FTCA and *Bivens* malicious prosecution claim. *See Nzegwu v. Friedman*, 605 F. App'x 27, 31 (2d Cir. 2015) (applying malicious prosecution elements as set forth in *Jocks* to a malicious prosecution claim under *Bivens*).

Because lack of probable cause for commencing a criminal proceeding is an element of a malicious prosecution claim under New York law, "the existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (citing *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983)). Probable cause to prosecute exists where there are "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (citation omitted). "[U]nder New York law, [an] indictment by a grand jury creates a

presumption of probable cause that may *only* be rebutted by
evidence that the indictment was procured by 'fraud, perjury,
the suppression of evidence or other police conduct undertaken
in bad faith.'"  *Savino*, 331 F.3d 72 (emphasis in original)
(quoting *Colon*, 468 N.E.2d at 1251).

      The New York law presumption of probable cause is
applicable to plaintiff's FTCA malicious prosecution claim under
28 U.S.C. § 1346(b)(1).  It also applies to his *Bivens* malicious
prosecution claim, as the Second Circuit has adopted the New
York presumption of probable cause as the federal standard in
*Bivens* actions for malicious prosecution arising in New York.
*Green v. Montgomery*, 219 F.3d 52, 60 (2d Cir. 2000) ("We have
held . . . that the New York presumption of probable cause, if
unrebutted, is sufficient to block a *Bivens* claim for malicious
prosecution . . . which is also governed by a federal probable-
cause standard.  In other words, we have adopted the New York
presumption as the federal standard." (citing *Bernard*, 25 F.3d
at 104-05)); *see also Rhodes v. United States*, 519 F. App'x 703,
705-06 (2d Cir. 2013) (applying New York law presumption of
probable cause in *Bivens* action for malicious prosecution);
*Alcantara v. City of New York*, 646 F. Supp. 2d 449, 460-62
(S.D.N.Y. 2009) (same); *Haji v. United States*, No. 08-CV-
2230(TPG), 2009 WL 602972, at *5-6 (S.D.N.Y. Mar. 9, 2009)
(same).

It is plaintiff's burden to rebut the presumption of probable cause that his indictment created. *Savino*, 331 F.3d at 73 (citing *Bernard* 25 F.3d at 104). To do so, the plaintiff must "establish what occurred in the grand jury, and [must] further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially.'" *Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004) (quoting *Colon*, 455 N.E.2d at 1250)). Conversely, plaintiff may not rebut the presumption by "any evidence tending to show the absence of probable cause." *Colon*, 468 N.E.2d at 1251 (citation omitted). This means that the finder of fact "may not weigh the evidence upon which the police acted or which was before the Grand Jury after the indictment has issued." *Id.*

Here, the complaint repeatedly asserts that "unreliable, misleading, false, and/or incomplete evidence [was] presented" to the grand jury in connection with the procurement of plaintiff's indictments. (Comp. ¶¶ 60-64.) Other than these conclusory assertions, however, the only "misleading" conduct that plaintiff alleges took place in the connection with the procurement of plaintiff's indictments is the failure to advise the grand jury of the statute of limitations under 18 U.S.C. § 3282(a). (Compl. ¶¶ 61, 64.) Plaintiff does not explain, however, how a failure to instruct the grand jury about a

waivable affirmative defense could rise to the level of bad faith necessary to rebut the presumption of probable cause.

The material plaintiff contends should have been presented to the grand juries is not exculpatory, nor is its omission misleading – the statute of limitations does not negate probable cause to believe that defendant committed a crime, it merely precludes criminal liability for its commission if it is successfully raised.  Here, in response to the statute of limitations defense, the prosecutors asserted tolling of the statute of limitations on the grounds that plaintiff was a fugitive from justice, but did not prevail.  (*See generally* SDNY M&O.)  Moreover, to the extent that an affirmative defense can be considered analogous to exculpatory material, the court notes that there is no obligation to present all arguably exculpatory information and evidence to a grand jury.  *United States v. Regan*, 103 F.3d 1072, 1081 (2d Cir. 1997) (citing *United States v. Williams*, 504 U.S. 36, 51-52 (1992)); *accord Savino*, 331 F.3d at 75 ("[The prosecutor] – who had the discretion and authority to decide what evidence to present to the grand jury – was under no duty to present every item of arguably exculpatory evidence in seeking an indictment." (citation omitted)).

Therefore, the failure to instruct the grand jury regarding the statute of limitations does not amount to conduct undertaken in bad faith in the procurement of plaintiff's

36

indictment, or otherwise undermine the presumption of probable cause to prosecute. *See Savino*, 331 F.3d at 75 (noting that a decision not to present arguably exculpatory material to a grand jury would not, in and of itself, "amount to conduct undertaken in bad faith."); *Sullivan v. LaPlante*, No. 03-CV-359(OGS)(RFT), 2005 WL 1972555, at *7 (N.D.N.Y. Aug. 16, 2005) (concluding, in an action asserting false arrest and malicious prosecution claims under 42 U.S.C. § 1983, the *Bivens* analogue, that where "the statute of limitations is not and cannot be an element of the crime at issue," it is "immaterial to the probable cause determination."), *aff'd*, 175 F. App'x 484 (2d Cir. 2006).

Plaintiff's allegation that the grand jury was not instructed about the five-year statute of limitations does not suffice to allege bad faith in the procurement of his indictment. Accordingly, plaintiff has not alleged sufficient facts that, if proven, would rebut the presumption of probable cause arising from his indictment and, thus, has not sufficiently pleaded a malicious prosecution claim. Therefore, plaintiff's FTCA malicious prosecution claim against the United States (Count III) and *Bivens* malicious prosecution claim against SA Lee and John Does 1-10 (Count IX) are dismissed for failure to state a claim upon which relief can be granted.

**5.     *Plaintiff's FTCA and Bivens Abuse of Process/Malicious Abuse of Process Claims (Counts IV and X)***

To establish a malicious abuse of process claim, a plaintiff must show that the defendant has "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino*, 331 F.3d at 76 (quoting *Cook v. Sheldon*, 41 F.3d 73, 79-80 (2d Cir. 1994)).

The collateral objective element is "[t]he crux of a malicious abuse of process claim." *Douglas v. City of New York*, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009). A malicious or retaliatory motive is insufficient to establish this element – it instead requires a showing that the defendant "aimed to achieve a collateral purpose beyond or in addition to" the legitimate ends of the process (here, plaintiff's arrest and prosecution). *Savino*, 331 F.3d at 77; *see also, e.g., Curiano v. Suozz*i, 469 N.E.2d 1324, 1326-27 (N.Y. 1984) ("A malicious motive alone . . . does not give rise to a cause of action for abuse of process." (citation omitted)). Put somewhat differently, abuse of process "resembles a form of extortion, by which the defendant invokes legal process to coerce the plaintiff into doing something other than what the process

necessitates." *Folk v. City of New York*, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017) (quoting *Krebs v. United States*, No. 98-CV-2590(MBM), 1999 WL 185263 at *5 (S.D.N.Y. Mar. 31, 1999)).

Here, the complaint contains only a conclusory allegation without factual amplification that "defendants were seeking a collateral advantage or corresponding detriment to plaintiff which was outside the legitimate ends of the process." (Compl. ¶¶ 94, 116.)  The complaint is wholly devoid of any non-conclusory allegations of fact that, if proven, would establish the presence of a collateral objective.  Accordingly, the complaint does not state an FTCA claim for malicious abuse of process.  For these same reasons, plaintiff fails to state a *Bivens* claim for malicious abuse of process against SA Lee and John Does 1-10.[8]  Accordingly, plaintiff's claims for malicious abuse of process (Counts IV and X) are dismissed for failure to state a claim.

### C. *Bivens* Negligence Claims (Counts XIV-XV)

Defendants seek dismissal of plaintiff's *Bivens* claims for negligent infliction of emotional distress and

---

[8]     It is not clear whether a *Bivens* claim for malicious abuse of process exists.  *See Williams v. Young*, 769 F. Supp. 2d 594, 604 (S.D.N.Y. 2011) ("As far as this Court is aware, no cause of action exists under *Bivens* for malicious abuse of process."); *but see Cook*, 41 F.3d at 80 ("In the criminal context, malicious abuse of process is by definition a denial of procedural due process." (citation omitted)); *Davis v. Passman*, 442 U.S. 228, 229-30, 243-44 (1979) (extending the *Bivens* remedy to violations of the Due Process Clause of the Fifth Amendment).  The court need not resolve this issue, because even assuming a *Bivens* claim for malicious abuse of process exists, plaintiff has not stated one.

"negligence/gross negligence" for lack of subject matter jurisdiction. (Mem. at 14).

"[A] claimant's exclusive remedy for nonconstitutional torts by a government employee acting within the scope of his employment is a suit against the government under the FTCA." *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994) (citing *Rivera v. United States*, 928 F.2d 592, 608-09 (2d Cir. 1991) and 28 U.S.C. § 2679(b)(1)).

The FTCA thus "provides government employees with immunity against claims of common-law tort," *Rivera*, 928 F.2d at 608, and the court lacks jurisdiction to hear such claims. *See* 28 U.S.C. § 2679(b) (providing that the FTCA is the exclusive remedy for common law torts committed by federal employees in the scope of employment and "[a]ny other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee . . . is precluded.") Accordingly, plaintiff's *Bivens* claims predicated on the common law torts of negligent infliction of emotional distress (Count XIV), and "negligence/gross negligence" (Count XV), against SA Lee and the John Doe 1-10 defendants, which are common law tort claims, are dismissed for lack of subject matter jurisdiction.

### D.   Remaining *Bivens* Claims (Counts XI-XIII)

Plaintiff's remaining *Bivens* claims are for violation of plaintiff's rights under the New York State Constitution

(Count XIII), "Unreasonably Prolonged Detention" (Count XI), and "Violation of Due Process" (Count XII). Defendants assert that the court lacks subject matter jurisdiction over plaintiff's *Bivens* claim arising from the alleged violation of plaintiff's rights under the New York State Constitution (Count XIII), (Mem. at 14), and that plaintiff has failed to state a claim with respect to the constitutional tort claims in Count XI and Count XII. (Mem. at 22-23.) As set forth below, the court agrees.

### 1. *Plaintiff's Claim for Violation of New York State Constitutional Rights (Count XIII)*

Plaintiff's claims for alleged violations of state constitutional rights are not cognizable under *Bivens*. As the court notes above, the Supreme Court has recognized that the judicially-created *Bivens* remedy is available only for violations of the Fourth Amendment, the Due Process Clause of the Fifth Amendment, and the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Malesko*, 534 U.S. 61, 66-68 (2001); *see also Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) ("In the 38 years since *Bivens*, the Supreme Court has extended it twice only: in the context of an employment discrimination claim in violation of the Due Process Clause, . . . and in the context of an Eighth Amendment violation by prison official." (citations omitted)). The Supreme Court has also "warned that the *Bivens* remedy is an extraordinary thing that

41

should rarely if ever be applied in new contexts." *Arar*, 585
F.3d at 571 (internal quotation marks and citations omitted).

      *Bivens* itself concerned federal, not state,
constitutional rights, *see Bivens*, 403 U.S. at 389, and its
application to vindicate *state* constitutional rights against a
*federal* law enforcement agent would certainly present a new
context. Plaintiff offers no explanation, much less authority,
as to why such an extension of *Bivens* would be appropriate.
Further, it appears questionable whether plaintiff's proposed
extension of *Bivens* would be constitutionally permissible in
light of nearly two hundred years of Supreme Court
jurisprudence. *Cf.*, *e.g.*, *McCulloch v. Maryland*, 17 U.S. 316,
390-91 (1819) ("Whatever the United States have a right to do,
the individual states have no right to undo.").

      Accordingly, the court concludes that it lacks subject
matter jurisdiction over plaintiff's claim for violation of his
rights under the New York State Constitution rights, and Count
XIII is dismissed.

### 2. *Plaintiff's Bivens Constitutional Tort Claims (Counts XI and XII)*

      Plaintiff asserts *Bivens* claims for "Unreasonably
Prolonged Detention," (Count XI, Compl ¶¶ 118-22), and
"Violation of Due Process." (Count XII, Compl. ¶¶ 123-25.)
Both claims invoke plaintiff's rights under the Fourth Amendment

and Fourteenth Amendment. (*Id.* ¶¶ 121, 124.) Plaintiff appears to allege that plaintiff's arrest, detention, and prosecution were constitutionally impermissible. (*See* Opp. at 6-10 (asserting that the warrant for plaintiff's arrest was invalid and that no probable cause existed to detain or prosecute plaintiff).)

Although the court is not aware of any authority recognizing the existence of an independent *Bivens* claim for unreasonably prolonged detention claim, the Second Circuit has considered the claim in an analogous action under 42 U.S.C. § 1983 based on the Fourth Amendment's prohibition of unreasonable seizures. *See Russo v. City of Bridgeport*, 479 F.3d 196, 208-09 (2d Cir. 2007) (treating plaintiff's unreasonably prolonged detention claim pursuant to 42 U.S.C. § 1983 as one based on the Fourth Amendment's protection against unreasonable seizures).

The *Russo* court wrote that, to prevail on an unreasonably prolonged detention claim a plaintiff "must establish (1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'" *Id.* at 205 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

Plaintiff has not alleged facts establishing the mishandling or suppression of exculpatory evidence, or any other conduct by SA Lee or the John Doe defendants that shocks the conscience.  Moreover, as the court has discussed, the complaint alleges facts establishing the existence of probable cause for plaintiff's arrest and prosecution.  Consquently, plaintiff has failed to allege a Fourth Amendment violation because plaintiff's arrest and prosecution were objectively reasonable and firmly grounded on probable cause.  *See*, *e.g.*, *Graham v. Connor*, 490 U.S. 386, 394-96 (1989) (concluding that where a civil rights plaintiff invokes the protections of the Fourth Amendment, the key inquiry is the reasonableness of the challenged conduct).  Plaintiff's *Bivens* claim for unreasonably prolonged detention (Count XI) is therefore dismissed for failure to state a claim.

As to Count XII, the complaint attempts, but fails, to assert a claim for violation of the Fourteenth Amendment's due process clause.  Although the complaint references the Fourth and Fourteenth Amendments, the Fourth Amendment does not contain a due process clause.  (*See* Compl. ¶ 123-25.)  Moreover, the Fourteenth Amendment's due process clause does not apply to the federal government, nor does any other provision of the Fourteenth Amendment that could be relevant to the acts and omissions alleged in the complaint.  *See San Francisco Arts &*

*Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 n.21

(1987) ("The Fourteenth Amendment applies to actions by a State.

The claimed association in this case is between the USOC and the

Federal Government. Therefore, the Fourteenth Amendment does not

apply."); *D.C. v. Carter*, 409 U.S. 418, 423-24 (1973) ("[T]he

commands of the Fourteenth Amendment are addressed only to the

State or to those acting un[d]er color of its authority. . . .

[A]ctions of the Federal Government and its officers are beyond

the purview of the Amendment." (collecting cases)); *see also*

U.S. Const. amend. XIV § 1 (". . . nor shall any *state* deprive

any person of life, liberty, or property, without due process of

law." (emphasis added)).

　　　　In any event, plaintiff was provided procedural due

process to challenge his arrest, detention, and prosecution

based on a statute of limitations defense.  Plaintiff's

substantive due process rights were not violated, based on the

facts of the complaint, because there was probable cause for his

arrest and prosecution.[9]

---

[9]　　Even if the complaint asserted a Fifth Amendment due process clause
claim, such a claim would not lie.  Plaintiff's claims ultimately stem from
the government's seizure of his person.  "[W]here a particular Amendment
provides an explicit textual source of constitutional protection against a
particular sort of government behavior, that Amendment, not the more
generalized notion of substantive due process, must be the guide for
analyzing these claims." *Russo*, 479 F.3d at 208-09 (internal quotation marks
and citations omitted).  Here, plaintiff's allegations implicate the express
protections of the Fourth Amendment, and must be analyzed under that rubric.

Accordingly, the plaintiff's *Bivens* due process claim (Count XII) is dismissed for failure to state a claim.

## **CONCLUSION**

For the foregoing reasons, defendants' motion is granted in its entirety as follows:

(1)     Defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is GRANTED with respect to the claims set forth in counts V, VI, XIII, XIV, and XV of the complaint.  "[W]hen a case is dismissed for lack of federal subject matter jurisdiction, 'Article III deprives the court of the power to dismiss the case with prejudice.'"  *Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017) (quoting *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999)).  Therefore, these counts are dismissed without prejudice.

(2)     Defendants' motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) is GRANTED with respect to the claims set forth in the remaining counts of the complaint, specifically, counts I, II, III, IV, VII, VIII, IX, X, XI, XII.

Although leave to amend a complaint should be freely given, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue

prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citations omitted). Here, the jurisdictional bar to those causes of action dismissed under Rule 12(b)(1) appears insurmountable. "The problem with [these] causes of action is substantive; better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Further, plaintiff has now filed two complaints that on their face establish the existence of probable cause for his arrest, confinement, and prosecution. The complaint fails to allege facts that, if proven, would rebut the presumption of probable cause established by plaintiff's arrest warrant and his indictment. The complaint also fails to plead sufficient facts to establish the existence of an improper collateral objective. Additionally, the court notes that in opposing the instant motion, plaintiff has not requested leave to file an amended complaint. Accordingly, the court concludes that leave to amend would be futile, plaintiff has had sufficient opportunity to plead viable claims but has not, and, consequently, plaintiff is denied leave to file another amended complaint.

The clerk of court is respectfully directed to enter judgment dismissing counts V, VI, XIII, XIV, and XV of the complaint without prejudice and dismissing counts I, II, III,

IV, VII, VIII, IX, X, XI, and XII with prejudice, and to close

the case.

**SO ORDERED.**

Dated: Brooklyn, New York
      March 31, 2018

          /s/
_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York
